# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

## Civil No. 11-CV-01254 PJS/JJG

Michael H. Johnson, Jr.,

          Plaintiff,

                                    **MEMORANDUM OF LAW**

v.

Wells Fargo Bank, N.A., as trustee for the
Holders of the SASCO 2007 MLN1 Trust
Fund,
          Defendant.

Plaintiff Michael H. Johnson, Jr. respectfully submits the following Memorandum of Law in support of his motion for Judgment on the Pleadings and Temporary Injunction:

## **INTRODUCTION**

The Defendant herein seeks to foreclose upon a mortgage by Notice of Mortgage Foreclosure Sale. Defendant's interest in the subject mortgage is based upon an Assignment of Mortgage, dated February 1, 2011.

However, Defendant as trustee of a REMIC trust, acted in contravention of the trust instrument in accepting the mortgage herein as an asset of the trust, because the assignment of the mortgage was a "prohibited transaction" according to the rules governing the trust.

As a result, Defendant's acceptance of the mortgage was void by operation of the applicable trust law.  Therefore, Defendant is not a real party in interest with the respect to the mortgage and has no right to notice a Sheriff's foreclosure sale of the subject property.

Defendant's Answer to the Complaint shows that there are no material facts in controversy, and that summary judgment may be granted as a matter of law.

Additionally and alternatively, Plaintiff petitions the court for a temporary injunction to maintain the status quo until the court issues a judgment or, alternatively, until the case may be heard on the merits.

## **UNDISPUTED FACTS**

1. Defendant, Wells Fargo Bank, N.A. appears in this case as the trustee of the SASCO 2007-MLN1 Trust Fund, which is a trust organized as a Real Estate Mortgage Investment Conduit ("REMIC").[1] (Complaint and Answer Caption) The REMIC trust for which Wells Fargo appears in this action is governed by a trust agreement (the "Trust Agreement"). (Answer ¶5 and Trust Agreement, Attorney's Affidavit, Exhibit D.)  According to the Trust Agreement, the startup day of the REMIC was in 2007. ( Trust Agreement, Attorney's Affidavit, Exhibit X, Cover Page.)

2. Plaintiff is the owner of record of an estate in fee simple of the property located at 8204 Hiawatha Circle, Eden Prairie, MN (the "Property").  (Complaint ¶1.; Answer ¶2., Certificate of Title, Attorney's Affidavit, Exhibit A.)

3. On or about November 6, 2006, Mortgage Electronic Registration Systems, Inc. recorded a mortgage in the amount of $248,000 on the Property with the Clerk of the County of

---

[1]  A REMIC (real estate mortgage investment conduit ) is a "mortgage securities vehicle authorized by the Tax Reform Act of 1986 that holds commercial and residential mortgages in trust, and issues securities representing an undivided interest in these mortgages . . . " *United States v. Lopez*, 222 F.3d 428, 435 n.8 (7th Cir. 2000) (quoting Barron's Business Guide Dictionary of Banking Terms 497).

Hennepin. (Complaint ¶2, Answer ¶3, Certificate of Title, Attorney's Affidavit, Exhibit A.)

4. On or about March 9, 2011, Defendant caused to be recorded an assignment of the Mortgage running in favor of Defendant (the "Assignment of Mortgage"). (Complaint ¶3, Answer ¶4, Attorney's Affidavit, Exhibits A & B.)

5. The Assignment of Mortgage from Mortgage Electronic Registration Systems, Inc. to was executed on February 1, 2011.(Complaint ¶4, Answer ¶4, Attorney's Affidavit, Exhibits A & B.)

6. Also on or about March 9, 2011, Defendant, through its counsel, served a Notice of Mortgage Foreclosure Sale upon Defendant, which states that a Sheriff's Sale of the Property is to occur on May 6, 2011. (Complaint ¶6, Answer ¶6, Attorney's Affidavit, Exhibit C.)

7. On or about June 27, 2011, Defendant, through its counsel, served a Notice of Mortgage Foreclosure Sale upon Defendant, which states that a Sheriff's Sale of the Property is to occur on September 23, 2011. (Complaint ¶6, Answer ¶6, Attorney's Affidavit, Exhibit E.)

**STATEMENT OF ISSUES**

I. **Should Summary Judgment be Granted to the Plaintiff?**

1. **What is the Summary Judgment Standard?**

2. **How should Foreclosure by Advertisement Statutes be Construed?**

3. **Is Defendant's Acceptance of the Note Void by Operation of Law?**

4. **Does Defendant Lack Standing to Foreclose?**

II. **Is a Temporary Injunction is Proper Under the *Dataphase* Test?**

1. **Will the Plaintiff's Rights be Irreparably Injured before Trial?**

**2.        Does the Balance of Harms Favor the Plaintiff?**

**3.        Is Plaintiff Likely to Prevail on the Merits?**

**4.        Does Public Policy Favor the Plaintiff?**

## ARGUMENT

**I.    Summary Judgment**

**1.        Plaintiff is entitled to Summary Judgment because there are no issues of fact and Plaintiff is entitled to judgment as a matter of law.**

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc</u>, 477 U.S. 242, 247 (1986).

In the case before the court, the material facts are undisputed: Plaintiff signed a note and mortgage, the REMIC trust was formed in 2007, the mortgage was assigned to a REMIC trust in 2011. These are all the material facts necessary to find that Defendant, as trustee of the REMIC Trust lacks standing to foreclose Plaintiff's mortgage.

**2.        The Statutes Governing Foreclosure by Advertisement are to be Strictly Construed.**

The Supreme Court of Minnesota has described the standard for foreclosure by advertisement thus:

> Because foreclosure by advertisement is a purely statutory creation, the statutes are strictly construed. We require a foreclosing party to "show exact compliance" with the terms of the statutes. If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void. <u>Jackson v. Mortgage Electronic Reg. Sys.</u>, 770 N.W.2d 487, 494 (Minn., 2009), citing <u>Moore v. Carlson,</u> 112 Minn. 433, 434, 128 N.W. 578, 579 (1910).

It is obvious that the mortgagee must validly hold an interest in the property in order to comply with the statutes for foreclosure by advertisement, "*A party claiming to be the assignee of a mortgage must have a legal assignment thereof*, duly recorded, before he can foreclose it by advertisement." Casserly v. Morrow, 101 Minn. 16, 19 (Minn., 1907)(emphasis supplied.) This requirement is not met in this case.

3.     **Defendant's Acceptance of the Plaintiff's Mortgage is Void as a Matter of Law.**

Defendant as trustee of a REMIC trust, acted in contravention of the trust instrument in accepting the mortgage herein as an asset of the trust. As a result, Defendant's acceptance of the mortgage was void by operation of the applicable trust law.  Therefore, Defendant is not a real party in interest with the respect to the mortgage.

Real Estate Mortgage Investment Conduits, or "REMICs," are a type of special purpose vehicle used for the pooling of mortgage loans and issuance of mortgage-backed securities. They were introduced in 1987 and are defined under the United States Internal Revenue Code (Tax Reform Act of 1986) (IRC §§ 860A-860G).  A REMIC is exempt from federal taxes, although income earned by investors is fully taxable. *See* IRC §860A(a).

For a trust to be a REMIC, the trustee must make a REMIC election.  Typically, REMICs are structured in the form of a trust, as is the case with the trust on whose behalf Defendant Wells Fargo appears herein.

The agreement that forms a REMIC trust is a Trust Agreement.  The Defendant's trust herein was formed by a Trust Agreement from 2007 (the "Trust Agreement").  The Trust Agreement contains provisions regarding, *inter alia,* the express declaration of trust creating the estate of the trustee, the conveyance of mortgage loans to the trust fund, the issuance of certificates to investors, and the REMIC election.  The Trust Agreement governs the operation of the Trust and defines the duties of the Trustee.  The standard Trust Agreement used in all SASCO

REMIC trusts is referenced as the MORTGAGE LOAN TRUST 2007-MLN1 Trust Agreement, Attorney's Affidavit, Exhibit D.

To qualify for REMIC tax-free status under the Internal Revenue Code (the "Code"), the mortgages notes held by the Trust must be "qualified mortgages" or "qualified replacement mortgages" for purposes of section 860G(a) of the Code.

Under the Code, a mortgage note held by a REMIC is deemed to be a "qualified mortgage," provided it is an obligation that is principally secured by an interest in real property, and it meets the following additional requirements:

> It is either transferred to the REMIC *on the startup day* or purchased *within three months after the startup day* pursuant to a fixed-price contract in effect on the startup day.

*See* IRC § 860G(a)(3).

A "qualified replacement mortgage," under the Code must meet these requirements:

> It is a mortgage note that would have been a qualified mortgage if it had been transferred to the REMIC on the startup day. Additionally, it must be received in exchange for another obligation held by the REMIC *within the three-month period beginning on the startup day*, or must be received for a "defective obligation" *within the two-year period beginning on the startup day*.

*See* IRC § 860G(a)(4)(*emphasis added*).

Mortgage notes that are acquired or accepted by a REMIC *after* the time-periods defined by the Code for "qualified mortgages" or "qualified replacement mortgages," *i.e.,* non-"qualified mortgage"s, can have adverse consequences for the REMIC. These adverse consequences include, (i) a 100 percent prohibited transactions tax on any gain realized on the income from the non-"qualified mortgage" loan, including income from foreclosure (*see* IRC § 860F(a)); and (ii) failure of the REMIC to continue to qualify under the Code for REMIC tax-free status.

In the instant case, the Mortgage Note that the Defendant seeks to foreclose on is a non-"qualified mortgage". This arises from the fact that the Assignment of Mortgage by which the Mortgage was arguably negotiated to the Defendant's Trust is effective as of February 1, 2011. This date is approximately four years after the Defendant Trust's REMIC 2007 "startup day".

Based on the date of Assignment of February 1, 2011, the Mortgage defendant seeks to foreclose upon can be neither a "qualified mortgage" nor a "qualified replacement mortgage."

The status of the Mortgage Note as a non-"qualified mortgage" for REMIC purposes under the Code, requires the Court to dismiss the instant foreclosure action for the reasons that follow.

The drafters of the Trust Agreement for Defendant's Trust were concerned that the Trust should not suffer any adverse REMIC consequences from the acceptance into the Trust of non-"qualified mortgages", such as the Mortgage Note herein. Therefore, the Trust Agreement provides that the Trustee's acceptance of a non-"qualified mortgage" note is a "prohibited transaction." Thus, the Trust Agreement provides:

> Section 10.02 Prohibited Transactions and Activities.
>
> ***Neither the Depositor, the Master Servicer nor the Trustee shall*** sell, dispose of, or substitute for any of the Mortgage Loans, except in a disposition pursuant to (i) the foreclosure of a Mortgage Loan, (ii) the bankruptcy of the Trust Fund, (iii) the termination of each REMIC pursuant to Article VII of this Agreement, (iv) a substitution pursuant to Article II of this Agreement or (v) a repurchase of Mortgage Loans pursuant to Article II of this Agreement, ***nor acquire any assets for any REMIC***, nor sell or dispose of any investments in the Distribution Account for gain, nor accept any contributions to any REMIC after the Closing Date*, unless it has received an Opinion of Counsel* (at the expense of the party causing such sale, disposition, substitution or acceptance) ***that such disposition, acquisition, substitution, or acceptance will not result in an Adverse REMIC Event***, (b) affect the distribution of interest or principal on the Certificates or (c) result in the encumbrance of the assets transferred or assigned to the Trust Fund (except pursuant to the provisions of this Agreement). (Emphasis supplied.)

Defendant could have no Opinion of Counsel on of February 1, 2011 that the acceptance of the Mortgage herein would not result in an "adverse REMIC event," because the Mortgage Note is a non-"qualified mortgage." Moreover, under no circumstances could such an opinion have been expressed in good faith, because any income to the Trust attributable to the Mortgage Note would result, under Section 860F(a)(1) of the Code, in the imposition of a 100 percent tax. [2] Furthermore the tax imposed under Section 860F(a)(1) of the Code is defined as an "Adverse REMIC Event" in Section 1.01 of the Trust Agreement, as follows:

> Adverse REMIC Event: Either (i) loss of status as a REMIC, within the meaning of Section 860D of the Code, for any group of assets identified as a REMIC in the Preliminary Statement to this Agreement, or (ii) *imposition of any tax, including the tax imposed under Section 860F(a)(1) of the Code on prohibited transactions*, and the tax imposed under Section 860G(d) of the Code on certain contributions to a REMIC, on any REMIC created

---

2

   IRC § 860F(a)(1) states:

   **(a) 100 percent tax on prohibited transactions**

   **(1)** Tax imposed

   There is hereby imposed for each taxable year of a REMIC a tax equal to 100 percent of the net income derived from prohibited transactions.

   IRC § 860F(a)(2)(B) defines prohibited transactions to include income attributable to mortgages that are not "qualified mortgages," as follows:

   **(2) Prohibited transaction**

   For purposes of this part, the term "prohibited transaction" means—

   (B) Income from nonpermitted assets

   The receipt of any income attributable to any asset which is neither a qualified mortgage nor a permitted investment.

   A "permitted investment" is defined in IRC § 860F(a)(5)-(8), and excludes income from non-"qualified mortgages" or income from foreclosure property which is acquired in connection with the default or imminent default of a non-"qualified mortgage."

> hereunder to the extent such tax would be payable from assets held as part of the Trust Fund. (Emphasis supplied.)

As noted above, section 860F(a)(1) of the Code provides for a 100 percent tax on prohibited transactions, which includes any income attributable to a mortgage which is not a non-"qualified mortgage." Therefore, it cannot be said that the non-qualified Mortgage Note herein would not result in an Adverse REMIC Event, and Defendant, upon information and belief, failed to satisfy the requirement of an opinion of counsel saying that the acceptance of this non-qualified Mortgage would not result in an Adverse REMIC Event. Accordingly, the acceptance of the Mortgage by the Trustee is a prohibited transaction, in contravention of the express statement of the Trust contained in the Trust Agreement.

According to the Trust Agreement, the effect of a prohibited transaction by the Trustee is governed by New York law, because the Trust Agreement provides that it is entirely governed by New York law, as follows:

> Section 11.06 Governing Law.
>
> THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Applying New York law, a prohibited transaction by the Trustee, *i.e.*, the acceptance of a non-"qualified mortgage," is an act of the Trustee that is expressly in contravention of the Trust. As a result, the acceptance of the Mortgage Note by the Trustee is void by operation of law. *See* New York Estates, Powers and Trusts Law, EPT § 7-2.4, which provides,

> **Act of trustee in contravention of trust**
>
> If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other ***act of the trustee in contravention of the trust***, except as authorized by this

> article and by any other provision of law, *is void*. (Emphasis supplied.)

Here, the Trust is expressed in the instrument creating the estate of the Trustee, *i.e.*, the Trust Agreement.  Therefore, the act of the trustee in accepting the February 1, 2011, assignment of the mortgage *via* the Assignment of Mortgage is void by operation of law.  Albeit, the Assignment of Mortgage may have transferred the Mortgage to the Trustee, nevertheless, the Trustee's acceptance of the Mortgage Note, evidenced by this action to foreclose, constitutes the acceptance of a non-"qualified mortgage," which is a prohibited transaction under the Trust Agreement, and which is, therefore, void by operation of law. NY EPT § 7-2.4.

**5. Defendant Lacks Standing to Foreclose Plaintiff's Mortgage.**

Since Defendant's acceptance of the Mortgage, based upon the Assignment of Mortgage is void by operation of law, Defendant cannot claim in this action to be a holder of the Mortgage Note.   Defendant has no substantive law right to enforce the Mortgage.

The substantive law, *i.e.*, NY EPT § 7-2.4, specifically voids any claim Defendant could make to enforce the Mortgage based upon the Assignment of Mortgage.

Therefore, Defendant is not a real party in interest and has no standing to bring this foreclosure action.  Thus, the Court lacks subject matter jurisdiction and the case must be dismissed. Based upon Defendant's lack of standing to foreclose, Plaintiff is entitled to judgment as a matter of law.

II.     **Temporary Injunction is Proper under the <u>Dataphase</u> standard.**

Should the court in this matter not grant the Plaintiff's motion for summary judgment before September 23 (the date currently set for the Sheriff's sale of the property,) it is necessary that the court issue a preliminary injunction to prevent Defendant from going forward with the foreclosure sale of Plaintiff's home.

The Eighth Circuit Court of Appeals has laid out the standard for when the granting of a preliminary injunction is proper in the matter of Dataphase Systems, Inc. v. C. L. Systems, Inc. as follows:

> In sum, whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (C.A.8 (Mo.), 1981)

The court further stated how these elements should interact in determining to grant a preliminary injunction:

> In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less. Dataphase Systems, Inc., 640 F.2d 109, 113.

The first factor to be considered before granting a preliminary injunction is whether the movant will be irreparably harmed if the injunction is not granted.

**1.      Plaintiff will be irreparably harmed if an injunction is not granted.**

Plaintiff in this matter stands to lose his legal right to his home in this matter on September 23, 2011 if this court does not issue a temporary injunction.  From a legal perspective, Minnesota Courts have found that a person's home is unique. See In re Kreger, 296 B.R. 202, 209 (Bankr.Minn., 2003)   From this standpoint alone, Plaintiff will be irreparably harmed if he loses his rights to his unique homestead; however, in this situation, the Plaintiff will be damaged yet further. If this court does not issue an injunction to prevent the Sheriff's Sale, Plaintiff will be forced to find a new home and incur the considerable costs involved in buying or leasing that

home in addition to the considerable costs of moving.  If the court then finds in Plaintiff's favor, he will be left straddling two homes and incurring the costs associated with both, an untenable financial position which will leave him worse off than his current situation.  Plaintiff will be irreparably damaged if the court does not issue an injunction to maintain the status quo.

**2.        The Balance of Harms Favors the Plaintiff.**

Plaintiff will be irreparably harmed if the court does not grant a temporary injunction and he prevails in this matter.  As discussed above, he will be forced to find shelter for his family, and be left trying to comply with any new mortgage or lease while being held to the terms of the mortgage on his current home.

Under <u>Dataphase</u>, the court must consider the harm to the Defendant as well. If the court issues an injunction in this matter and Defendant prevails, Defendant would be delayed in its foreclosure proceedings for the pendancy of this proceeding, would incur hundreds of dollars in additional costs to reinstitute its foreclosure, and may incur some loss or offsetting gain in the value of the property.

While Plaintiff may be financially ruined by failure to grant a preliminary injunction, Defendant will likely be slightly inconvenienced. When balancing the harms the court must see that the balance of harms tips significantly in favor of the Plaintiff, and the granting of a preliminary injunction.

**3.        Plaintiff is Likely to Prevail on the Merits.**

The third <u>Dataphase</u> factor is whether the movant is likely to prevail on the merits. Plaintiff's arguments in favor of summary judgment need not be restated here, but clearly if Defendant does not validly hold the mortgage then Defendant may not foreclose the mortgage.

Plaintiff is likely to prevail on the merits and this factor weighs heavily in favor of granting the preliminary injunction.

**4.        The Public Interest Favors the Plaintiff.**

Under the facts of this case, Defendant has foreclosed on the Property through a foreclosure by advertisement. Foreclosure by advertisement provides a way to avoid the delay and expense of judicial proceedings. Soufal v. Griffith, 159 Minn. 252, 256, 198 N.W. 807, 809 (1924). This expeditious method does come at a price, which is strict compliance with the statutory requirements.

"Because foreclosure by advertisement is a purely statutory creation, the statutes are strictly construed. We require a foreclosing party to "show exact compliance" with the terms of the statutes. If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void." Jackson, 770 N.W.2d at 494 (citations omitted).

According to the United States Supreme Court:

> The public policy of the government is to be found *in its statutes*, and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials; but when the lawmaking power speaks upon a particular subject, over which it has constitutional power to legislate, *public policy in such a case is what the statute enacts*. Standard Oil Company of New Jersey v. United States 14, 15 16, 1910, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1910)

The United States Supreme Court has made it clear that when the legislature has spoken regarding public policy that the statutes are the policy. While the foreclosure by advertisement statutes were originally enacted in 1849 when Minnesota became a territory. (Jackson, 770 N.W.2d at 494), the legislature has fine-tuned the balance between good business and homeowner rights through Minn. Stat. 582.25, which enumerates forty-four faults in the details of a foreclosure which will not be allowed to reopen the foreclosure, generally after a year has passed. Implicit in this statute is the idea that the statute should be strictly construed, because

such faults in the details of a mortgage foreclosure in actions begun before the expiration of the required time period may be sufficient to undo the foreclosure.  The legislature enacted this tune-up to the business-homeowner balance in 1976, and significantly revised it in 1995.  The legislature has balanced the public policy considerations regarding foreclosure by advertisement, and the court, in strictly construing the law regarding foreclosure by advertisement, in accordance with Jackson and Standard Oil should place equal value on the policy determinations underlying that law.  That policy determination favors granting a preliminary injunction to the Plaintiff.

Additional public policy arguments come into play in the interpretation of trust law.  New York law on the interpretation of trust agreements is clear. *Supra*, pp. 8-9.  Trust law has been called the most innovative creation of English law. Roy Goode, *Commercial Law* (2nd ed.) We have certainly seen the power of trust law for ill in the recent financial crisis, which has given the entire globe a cold.  It is clear that allowing the trustee to ignore the trust agreement and the IRS regulations designed to limit the trust unleashes more innovation that we all may be ill-equiped to withstand.

The public policy considerations in both Minnesota and Federal law favor the granting of a preliminary injunction.

## **CONCLUSION**

Defendant as trustee of a REMIC trust, acted in contravention of the trust instrument in accepting Plaintiff's mortgage, because the assignment of the mortgage was a "prohibited transaction" according to the rules governing the trust.  As a result, Defendant's acceptance of the mortgage was void by operation of the applicable trust law.  Therefore, Defendant is not a real party in interest with the respect to the mortgage and has no right to notice a Sheriff's

foreclosure sale of the subject property. There are no material facts in controversy and Plaintiff is entitled to summary judgment as a matter of law.

The foreclosure sale of Plaintiff's property is currently scheduled for September 23, 2011, three days after this motion is scheduled to be heard.  As a result Plaintiff must be awarded a temporary injunction to maintain the status quo until the court issues a judgment or, alternatively, until the case may be heard on the merits. Plaintiff clearly will be irreparably harmed if such an injunction is not ordered and far more so than Defendant will be if the injunction is ordered. Plaintiff has shown that he is likely to prevail on the merits in his motion for summary judgment. Finally the balance of policy as expressed in the statute clearly favors the issuance of the preliminary injunction.

Based upon the foregoing, plaintiff Michael H. Johnson, Jr. respectfully requests that the Court grant his motion for summary judgment and for a temporary injunction, enjoining the Defendant and the Sheriff of Hennepin County from taking any steps to effect a foreclosure sale on the subject property known by the address: 8204 Hiawatha Circle, Eden Prairie, MN, and granting costs, fees and such further relief as the Court deems just and proper.

Dated:  August 8, 2011           By /s Paul J. Bosman
                                 Paul J. Bosman, I.D. No. 388865
                                 Bittle Bosman LLC
                                 Park Place East
                                 5775 Wayzata Blvd., Ste. 700
                                 St. Louis Park, MN 55416
                                 952-582-2900