UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| MICHAEL H. JOHNSON, JR., | Case No. 11-CV-1254 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER |
| WELLS FARGO BANK, N.A., as trustee for the Holders of the SASCO 2007 MLN1 Trust Fund, | |
| Defendant. | |

---

Moshe Mortner, THE MORTNER LAW OFFICE, P.C., for plaintiff.

Jared M. Goerlitz, PETERSON, FRAM & BERGMAN, P.A., for defendant.

Plaintiff Michael H. Johnson, Jr. borrowed money to buy a home, executed a mortgage on that home to secure his promise to repay the money, and then failed to repay the money as promised. Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), as trustee for the Holders of the SASCO 2007 MLN1 Trust Fund ("the Trust"), seeks to foreclose upon Johnson's mortgage.

Johnson filed this lawsuit to block the foreclosure. In his complaint, Johnson claimed that Wells Fargo cannot foreclose on his mortgage because the mortgage was never validly assigned to the Trust. The parties engaged in discovery, and all of the evidence produced in discovery shows that the mortgage was indeed validly assigned to the Trust. Perhaps as a result, Johnson now seeks to pursue an entirely new claim against Wells Fargo — one that conflicts with allegations made in his original complaint. Johnson now contends, based solely on one person's search of one database, that the Trust, in fact, does not exist.

This matter is before the Court on Wells Fargo's motion for summary judgment. Wells Fargo argues that a reasonable jury could not find, as Johnson initially alleged, that his mortgage

was not validly assigned to the Trust. Wells Fargo also argues that Johnson should not be permitted to pursue his new theory that Wells Fargo is the trustee of a nonexistent trust. The Court agrees and enters summary judgment on behalf of Wells Fargo.

## I. JOHNSON'S CLAIM AS PLEADED

In 2006, Johnson borrowed $248,000 from Bank of America, N.A. ("Bank of America") to buy a home. Johnson signed a note in which he promised to repay the money, and Johnson executed a mortgage on his home to secure that promise. The mortgage was executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Bank of America, and MERS properly recorded the mortgage.

At some point — Wells Fargo claims that it was before March 13, 2007 — Bank of America purported to assign the note to the Trust. Johnson later defaulted on the note, and MERS assigned its interest in the mortgage to the Trust in February 2011 so that the Trust could foreclose on the mortgage. A sheriff's sale of Johnson's property was scheduled for May 6, 2011, but that sale has been repeatedly postponed — and Johnson has lived rent free in his home for over a year — as a result of this litigation.

Johnson's complaint alleges that the assignment of his *mortgage* to the Trust was invalid — and thus that Wells Fargo cannot foreclose on that mortgage — because the Trust did not obtain his *note* prior to March 13, 2007. It takes a few paragraphs to explain Johnson's theory:

The Trust is organized as a Real Estate Mortgage Investment Conduit ("REMIC"). Investment income derived from REMICs is not subject to federal taxation, 26 U.S.C. § 860A(a), but all net income derived from "prohibited transactions" engaged in by a REMIC is subject to a 100-percent tax. 26 U.S.C. § 860F(a)(1).

One such "prohibited transaction" is the acquisition of a non-qualified mortgage; thus, investment income that a REMIC derives from non-qualified mortgages is subject to the 100-percent tax pursuant to § 860F(a)(1). With exceptions not applicable here, a mortgage must be in the possession of a REMIC on the startup date of that REMIC in order to be considered a qualified mortgage. 26 U.S.C. § 860G(a)(3).

Reflecting this statutory scheme, the trust agreement that governs the Trust prohibits the Trust from taking possession of non-qualified mortgages — that is, from acquiring mortgages after the Trust's startup date. Mason Aff. Ex. 2 § 10.02, Aug. 9, 2011 [ECF No. 12-2] ("Trust Agr."). The Trust's startup date is March 13, 2007. *See* Trust Agr. § 10.01(b) (equating startup date with closing date); Trust Agr. § 1.01 (defining the closing date as March 13, 2007).

The trust agreement also provides that it is governed by New York law. Trust Agr. § 11.06. Under New York law, every sale, conveyance, and act by a trustee in contravention of the trust agreement is void. N.Y. Est. Powers & Trusts Law, § 7-2.4. In short, any attempt by the Trust to acquire a mortgage after the Trust's startup date — that is, after March 13, 2007 — is void under New York law.

There is an important exception: The parties agree that if the Trust possessed a *note* at its startup date, then the Trust may acquire the *mortgage* securing that note after the Trust's startup date. Put differently, a mortgage acquired after March 13, 2007 is a qualified mortgage as long as the note secured by the mortgage was in the possession of the Trust as of March 13, 2007.

As noted, MERS assigned its interest in the Johnson mortgage to the Trust in February 2011, long after the Trust's startup date. Thus, on plaintiff's theory, MERS's assignment of the Johnson mortgage to the Trust was void under New York law — and Wells

Fargo cannot foreclose on that mortgage — unless the Trust possessed the Johnson note on March 13, 2007. Johnson alleges that the Trust did *not* possess his note on March 13, 2007, and thus that MERS's purported assignment of the mortgage to the Trust in February 2011 was invalid.

Wells Fargo now moves for summary judgment, arguing that a reasonable jury could not find, based on the evidence in the record, that the Trust did not possess the Johnson note on the Trust's startup date. The Court agrees.

U.S. Bank National Association ("U.S. Bank") has at all times served as the custodian of the Trust's documents. Kemayah Aff. Ex. 1, June 14, 2012 [ECF No. 35] ("Second Kemayah Aff."). U.S. Bank attests that it received the original collateral files pertaining to Johnson's note on November 9, 2006, long before the startup date of the Trust. Kemayah Aff. ¶ 5, June 14, 2012 [ECF No. 33] ("First Kemayah Aff."). And both the initial and final certifications prepared by U.S. Bank cite Johnson's loan as one of the assets possessed by the Trust on its startup date. Second Kemayah Aff. Exs. 2-3.

Moreover, on March 9, 2007 (four days before the startup date of the Trust), U.S. Bank (in its capacity as document custodian for the Trust) submitted to Wells Fargo (in its capacity as trustee for the Trust) a list of all of the documents that were missing from the files relating to the loans that had been assigned to the Trust. Second Kemayah Aff. Ex. 4. U.S. Bank said the following with respect to Johnson's note: "Document is a True & Correct copy, need recorded original." *Id*. at 67. In other words, U.S. Bank told Wells Fargo that the Trust possessed a true and correct copy of Johnson's note, but that, to complete the file, Wells Fargo needed to obtain

the "recorded original" of that note.  These records leave little doubt that the Johnson note was assigned to the Trust prior to the Trust's startup date.

Johnson disagrees.  His disagreement focuses mainly on U.S. Bank's certification of receipt of documents; Johnson largely ignores the other evidence relied on by Wells Fargo.  And, with respect to U.S. Bank's certification of receipt of documents, Johnson mainly argues that the certification identified only the documents that U.S. Bank did *not* have on the Trust's startup date, and did not identify the documents that U.S. Bank *did* have.

Johnson is not entirely correct.  It is true that the certification supplied by U.S. Bank to Wells Fargo on March 9, 2007 was a list of documents that U.S. Bank was missing.  But in many instances, U.S. Bank referred to a document that U.S. Bank did not have in a way that described a document that U.S. Bank *did* have.  That was precisely what U.S. Bank did with respect to the Johnson note.  U.S. Bank represented both what was missing — "need recorded original" — and what it had — "Document is a True & Correct copy."  Second Kemayah Aff. Ex. 4 at 67.

Moreover, even if U.S. Bank had identified only the documents that it was missing, its failure to include the Johnson note on that list would be admissible evidence that it possessed the note.  Just as Sherlock Holmes drew inferences from the fact that a dog did not bark, jurors commonly draw inferences from the fact that something is not mentioned in a business record.  Indeed, this form of proof is so common that one of the Federal Rules of Evidence specifically addresses it.  *See* Fed. R. Evid. 803(7).  For example, it would be unremarkable for a litigant to prove that a student was in class on a particular day by introducing evidence that the student was not among those listed as absent on that day.  In this case, U.S. Bank quite sensibly decided to inform Wells Fargo of the relatively few documents that it was *missing*, rather than to attempt to

list the far more numerous documents that it was *not* missing. And thus, even if U.S. Bank had not affirmatively reported that it possessed a true and correct copy of Johnson's note, its *failure* to report that it did *not* possess a copy of Johnson's note would have been evidence of its possession of the note.

In his complaint, the sole challenge that Johnson makes to the ability of Wells Fargo to foreclose on his mortgage is that the Trust did not possess his note as of its March 13, 2007 startup date, and thus MERS's later assignment of his mortgage to the Trust was invalid. On the record before the Court, no reasonable jury could agree with Johnson. Wells Fargo is therefore entitled to summary judgment on Johnson's claim.[1]

## II. JOHNSON'S NEW LEGAL THEORIES

Perhaps recognizing that he can no longer plausibly argue that the Trust did not possess his note at its startup date, Johnson now seeks to pursue a claim that the Trust cannot foreclose upon his property because the Trust does not exist. The entire basis for this claim is as follows:

---

[1] At the hearing on Wells Fargo's motion, Johnson contended that MERS's assignment of his mortgage to Wells Fargo may be invalid because the signature of the MERS official who executed the assignment may have been forged. The assignment of the Johnson mortgage was executed by a MERS official named Julie Sabon-Van Dyke. Johnson has found a handful of examples of Sabon-Van Dyke's signature on the Internet, and he argues that the signatures are inconsistent, suggesting that different people are signing documents using her name.

Johnson did not plead this claim in his complaint — and he has not properly requested permission to amend his complaint to pursue it — and thus the Court will not allow him to bring this claim against Wells Fargo. Putting that aside, Johnson's evidence raises, at most, the kind of "metaphysical doubt" that does not defeat a motion for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Johnson is essentially suggesting that Wells Fargo — one of the world's largest banks, with over a trillion dollars in assets — committed a felony in order to foreclose on a $248,000 property. And, of course, if Wells Fargo committed fraud, the victim of that fraud was not Johnson, but MERS. Yet MERS has not raised any objection to Wells Fargo foreclosing on the Johnson property.

Johnson hired an "expert," the expert ran a search of the Bloomberg Data System, and the expert could not find the Trust listed in that database. For a number of reasons, the Court will not permit Johnson to pursue this claim against Wells Fargo.

To begin with, the affidavit of Johnson's expert — a professor named Kenneth E. Lehrer — does not comply with the procedural requirements of Fed. R. Civ. P. 26(a)(2)(B). Lehrer Aff., Aug. 9, 2012 [ECF No. 48] ("Lehrer Aff."). Lehrer does not list all publications he has authored in the past ten years, nor does he list all other cases during the past four years in which he has testified as an expert, nor does he provide a statement of the compensation paid to him for his work in this case. More importantly, Lehrer fails to identify "the facts or data" used in forming the opinions expressed in his report, as required under Fed. R. Civ. P. 26(a)(2)(B)(ii). As noted, the entire basis for Lehrer's conclusion that the Trust does not exist is that he ran a search of the Bloomberg Data System and could not find the Trust listed. Lehrer Aff. ¶ 32. Lehrer does not explain how he conducted the search. Lehrer does not say anything about the reliability of the Bloomberg Data System. And Lehrer does not explain why he did not engage in any other efforts to ascertain the existence of the Trust — efforts that would help determine whether his finding was an anomaly. Lehrer's assertion is akin to an assertion that "I looked for the plaintiff in the phone book, and he was not listed, so he must not exist." Such skimpy disclosures do not suffice under Rule 26, and Lehrer's expert affidavit is rejected on that basis.

The Court also rejects Lehrer's affidavit because it was not timely submitted. Under the pretrial scheduling order entered by Magistrate Judge Jeanne J. Graham [ECF No. 11], Johnson was required to identify his expert witnesses by March 1, 2012. Any expert reports had to be submitted by Johnson by April 2, 2012. Depositions of expert witnesses were to be completed

by June 1, 2012.  Johnson did not say a word to anyone about Lehrer or his surprising finding until July 31, 2012 — five months after experts were to be identified, four months after expert reports were to be exchanged, two months after expert depositions were to be completed, and only three days before the summary-judgment hearing was originally scheduled.  Johnson missed multiple deadlines, and he missed them by a lot.

Johnson claims that his tardiness should be forgiven because Lehrer's affidavit was newly discovered evidence — that is, evidence that could not have been discovered prior to expiration of the deadlines set forth in the pretrial scheduling order.  This is plainly not true.  If the Trust has never existed, then that fact could have been discovered before the deadlines expired just as readily as it could have been discovered after the deadlines expired.  Johnson has not suggested any reason — and none occurs to the Court — why he could not have retained an expert to search the Bloomberg Data System long before the deadlines expired.  The Court may modify the pretrial scheduling order only for good cause, Fed. R. Civ. P. 16(b)(4), and Johnson has not shown good cause.

Johnson's introduction of this new claim also amounts to a de facto attempt to amend his complaint, for which leave of the Court is required.  Fed. R. Civ. P. 15(a)(2).  Johnson has not formally moved for permission to amend his complaint in a manner that complies with Local Rules 7.1 and 15.1, and that itself is sufficient reason to deny him permission to pursue his new theory.  *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules.")  Moreover, even if Johnson had filed a proper motion for leave to amend his

complaint, the Court would deny the motion, as the new claim that Johnson seeks to pursue is utterly implausible.

Again, Johnson claims that the Trust does not exist. Wells Fargo has presented a 222-page trust agreement; according to Johnson, this document must be an elaborate forgery. Wells Fargo has also presented a 34-page Custodial Agreement between it and U.S. Bank — an agreement under which U.S. Bank provided hundreds or thousands of hours of work for the Trust; according to Johnson, this, too, must be an elaborate forgery. A quick Internet search reveals that Moody's Investor Service provides a credit rating for the Trust and has updated that credit rating several times over the past few years; according to Johnson, Moody's has been rating the credit of a nonexistent entity. Another quick Internet search uncovers dozens of properties that the Trust has foreclosed upon since its formation; according to Johnson, no one involved in any of these foreclosures — judges, attorneys, sheriffs, homeowners — noticed that the foreclosing entity did not exist. Johnson's claim is simply not plausible, and the Court will not permit Johnson to amend his complaint at this late date to pursue it.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 31] is GRANTED.

  2.  Plaintiff's complaint [ECF No. 1-3] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 3, 2012      s/Patrick J. Schiltz
                  Patrick J. Schiltz
                  United States District Judge